UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-690 (RCL) |
| v. : | |
| : | |
| PHILIP SEAN GRILLO : | |
| : | |
| : | |
| **Defendant.** : | |

**UNITED STATES' MOTION IN LIMINE TO PRECLUDE
DIMINISHED CAPACITY EVIDENCE OR ARGUMENT**

The government respectfully requests that the Court issue an order precluding, or limiting, defendant Philip S. Grillo from eliciting evidence or argument concerning any diminished capacity or voluntary intoxication defense. Further, the government moves *in limine* to preclude the admission of any hearsay basis for the opinions, or for any expert opinion concerning intoxication.

The Court should preclude, or limit, any psychological testimony for several reasons. First, the psychological report by Dr. Akinsulure-Smith does not purport to negate any *mens rea* of the defendant, a prerequisite of any narrowly defined "diminished capacity" defense. Rather, Dr. Akinsulure-Smith opines only that the defendant exercised "poor impulse control" and "poor judgment and decision making" in explaining his conduct on January 6, 2021. Second, at a maximum, any mental health defense could only be relevant to the obstruction charge under 18 U.S.C. § 1512(c)(2) as that is the only "specific intent" offense charged. Third, for similar reasons, any voluntary intoxication defense could only be relevant to a specific intent offense, the obstruction charge. Fourth, Dr. Akinsulure-Smith is unqualified to give any opinion concerning voluntary intoxication as she is not a toxicologist and has no specialized training in forensic issues or substance abuse. Rather, Dr. Akinsulure-Smith's specialized training and experience appears limited to human rights violations and immigration issues. As such, under *Daubert v. Merrell*

*Dow Pharms., Inc*., 509 U.S. 579 (1993), any testimony would not "fit" the facts, circumstances, and issues presented in this case and would not be "helpful" to the factfinder. Finally, the information concerning any claimed voluntary intoxication comes almost exclusively from the defendant's self-report to the doctor. The testimony is irrelevant, contains improper hearsay "conduit" evidence and should be excluded.

## BACKGROUND

The defendant is charged with five federal offenses related to his conduct at the United States Capitol on January 6, 2021: 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding); 18 U.S.C. § 1752(a)(l) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).

The defendant's offenses stem from his conduct in entering the United States Capitol on January 6, 2021, as well as his conduct inside the Capitol that day. At approximately 2:20 pm, the defendant climbed up and through a broken window at the Senate Wing door, carrying a megaphone.

 

The defendant subsequently joined a mob that overran a police line in the Crypt. After leaving the Crypt he was interviewed on video by another individual inside the Capitol building and was asked why he was there. The defendant responded, *inter alia*, "I'm here to stop the steal" and "We want justice. We want a fair and equal vote."



*Grillo being "interviewed" by another individual inside the Capitol*

The defendant subsequently made his way to the Rotunda, where he pushed through officers

3

blocking the exit in the area of the East Rotunda doors.

 

The defendant was part of the mob that confronted officers trying to prevent more rioters from entering the Capitol through the East Rotunda doors and was part of the mob on the inside of the door that succeeded in pushing past officers and opening the doors, so that an even greater mob could enter from outside.



*The Defendant forcing open doors allowing other rioters to enter*

The defendant proceeded to go out and come back into the Capitol building several times, each time participating in a mob that illegally pushed past police officers attempting to close the door. After exiting the Capitol at the East Rotunda doors, the defendant also recorded himself on

4

his own cell phone stating: "We fucking did it," "We stormed the Capitol," and "We shut it down."



*Screenshot a video recorded by the Defendant on the East Front steps*

On April 19, 2023, the defendant was scheduled to go to trial on the five counts in the indictment.  However, at a final pretrial conference on April 17, 2023, the defendant's attorneys informed the court that he had voluntarily checked himself into a mental hospital and thus was not available for trial. According to the subsequent report of Dr. Akinsulure-Smith dated August 29, 2023, the defendant was admitted on April 16, 2023, and discharged on April 21, 2023.

On September 20, 2023, the defendant gave notice that he intends to introduce "expert testimony at trial relating to a mental disease or defect or any other mental condition bearing on the issue of guilt." ECF No. 74.   The defendant also gave notice that he intends to introduce the testimony of Dr. Adeyinka M. Akinsulure-Smith, Ph.D., ABPP.   ECF No. 75.   The defendant requested the evaluation "to assess Mr. Grillo's mental competency, current clinical and diagnostic status, and to review the psychosocial factors that may have contributed to his actions."  *See*

5

Report of Dr. Akinsulure-Smith dated August 29, 2023, submitted under seal. During the course of their meetings, the defendant made several self-serving statements to the doctor, including his claim that "his inebriated state and behaviors on January 6, 2021, had come from '…all night, all day drinking and smoking marijuana.'" Report, pg. 2-3. Dr. Akinsulure-Smith concluded that "Mr. Grillo is presently able to assist his legal team properly in his defense and to understand the nature and consequences of the proceedings against him." *Id.*, at 2. Additionally, Dr. Akinsulure-Smith concluded that:

> Mr. Grillo's mental health problems have manifested themselves primarily in internalizing problems (those rooted in distress emotions, such as sadness and fear) characterized by anxious and depressive symptoms, that have affected his internal world. Unfortunately, these factors in combination with his polysubstance use have led to poor impulse control and poor judgment and decision-making, creating difficulties in his external world. Mr. Grillo's actions on January 6, 2021 are an example of how his polysubstance use and mental health problems caused poor impulse control, judgement, and decision-making.

Report of Dr. Akinsulure-Smith dated August 29, 2023, pg. 15.

The government agrees that the obstruction of justice offense (18 U.S.C. §§ 1512(c)(2), and 2) is a specific offense crime. *See United States v. Williams*, No. 21-0618 (ABJ), 2022 U.S. Dist. LEXIS 110743, 2022 WL 2237301 (D.D.C., Jun. 22, 2022) ("Acting 'corruptly' within the meaning of § 1512(c)(2) means acting with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct the [proceeding]"). The trespass and disorderly conduct offenses (40 U.S.C. § 5104(e)(2)(D) and 18 U.S.C. § 1752(a)(1)) are general intent crimes.

## ARGUMENT

### I. GENERAL LEGAL STANDARD AND PRINCIPLES

Federal Rule of Evidence 702 principally governs admission of expert testimony. The party

seeking to present the expert's testimony must convince the Court of its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 113 S. Ct. 2786, 125 L. Ed. 2d 469 & n.10 (1993), *see also United States v. Libby*, 461 F. Supp. 2d 3 (D.D.C. 2006). In all instances, the proffered expert must be qualified "by knowledge, skill, experience, training, or education," and her testimony must be helpful to the trier of fact. Fed. R. Evid. 702; *Miller v. Holzmann*, 563 F. Supp. 2d 54 (D.D.C. 2008). Generally, her testimony must be "based upon sufficient facts or data" and must also be "the product of reliable principles and methods," applied "reliably to the facts of the case." *Id.*

Moreover, psychological testimony is subjected to particular scrutiny. In *United States v. Pohlot*, 827 F.2d 889, 890 (3d Cir. 1987), the Third Circuit instructed district courts that they were obliged to "carefully scrutinize psychiatric defense theories bearing on *mens rea*." The Court explained that such evidence is easily manipulated, and often confusing: "Psychiatrists are capable of supplying elastic descriptions of mental states that appear to but do not truly negate the legal requirements of *mens rea*." *Id*. Thus, district courts presented with *in limine* motions must be vigilant to assure that only legitimate expert testimony is presented to the trial jury: "Presenting defense theories or psychiatric testimony to juries that do not truly negate *mens rea* may cause confusion about what the law requires." *Id*. Thus, "[i]n light of the strong danger of misuse, we join other circuits that have directed district courts to examine proffered psychiatric testimony carefully 'to determine whether the proof offered is grounded in sufficient scientific support to warrant use in the courtroom, and whether it would aid the jury in deciding the ultimate issues.'" *Id*. at 905, *citing United States v. Brawner*, 471 F.2d 969 (D.C. Cir. 1972).

## II. Diminished Capacity Defenses Are Narrowly Permitted

The government notes that the defendant has not given notice that he intends to raise an insanity defense. Rather, the defendant notified the Court and the government that he intends to introduce "expert testimony at trial relating to a mental disease or defect or any other mental condition bearing on the issue of guilt." ECF No. 74. In short, the defendant seeks to present a "diminished capacity" defense. Negating *mens rea* is a permissible but narrow defense as to specific intent crimes. In 1984, Congress passed the Insanity Defense Reform Act ("IDRA") to prohibit the defenses of "diminished capacity" and "diminished responsibility. *United States v. Pohlot*, 827 F.2d 889, 890 (3d Cir. 1987). These defenses that Congress aimed to preclude previously had allowed "exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection; however, these matters do not strictly negate *mens rea*." *Id*; *see also United States v. Sacks*, 2009 U.S. Dist. LEXIS 109094; 2009 WL 4114169 (D. N.J. 2009). The IDRA made it "an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a). "Mental disease or defect does not otherwise constitute a defense." *Id.* The IDRA thus abolished the volitional prong of the Model Penal Code approach to insanity, "which had permitted acquittal if the defendant 'as a result of mental disease or defect . . . lacks substantial capacity . . . to conform his conduct to the requirements of the law.'" *Pohlot*, 827 F.2d 896 (quoting Model Penal Code § 4.01 (1962)). The IDRA "also shifted the burden of proof, requiring the defendant to prove insanity by clear and convincing evidence." *Id*.; see also 18 U.S.C. § 17(b).

After the passage of the IDRA, there remains a narrow opening through which defendants may still offer psychiatric evidence without having the burden of proving an affirmative defense: defendants may argue the government cannot meet its burden of proving *mens rea*. This is also known as negating *mens rea*. It should be a rarely used defense because "[e]ven the most psychiatrically ill have the capacity to form intentions, and the existence of intent usually satisfies any *mens rea* requirement." *Pohlot*, 827 F.2d at 903; *see e.g. United States v. Mezvinsky*, 206 F. Supp. 2d 661, 673-75 (E.D.P.A. 2002) (excluding expert testimony on defendant's bipolar disorder and brain damage causing poor judgment and "bad choices" as irrelevant to defendant's capacity to deceive). Rule 403 further narrows the opening for this evidence and is another significant hurdle to admissibility. *United States v. Schneider*, 111 F.3d 197, 203 (1st Cir. 1997) (affirming exclusion of "impaired judgment" evidence due to limited relevance to the lack of deceit claim and high potential to "mislead the jury into thinking that such a medical condition amounts to temporary insanity or ameliorates the offense.").

"Evidence offered as psychiatric evidence to negate such specific intent is admissible . . . when such evidence focuses on the defendant's specific state of mind at the time of the charged offense." *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)(internal quotation marks omitted), *see also United States v. Hardy*, 730 F. Supp. 1140, 1144 (D.D.C. 1990) ("when a defendant is charged with a general intent crime, as is the case here, evidence concerning a defendant's mental condition becomes irrelevant and confusing to a jury").   Negating *mens rea* is "directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime." *United States v. Twine*, 853 F.2d 676, 678 (9th Cir. 1987). Evidence that defendant suffers from some mental illness or deficits is not, by itself, sufficient to

9

trigger a diminished capacity instruction. *United States v. Christian*, 749 F.3d 806, 815 (9th Cir. 2014). Instead, there must be some link, however weak, between defendant's mental illness and his ability to form a specific intent. *Id*. at 815. In analyzing whether expert testimony on *mens rea* is admissible, "[t]he proper focus should be on the proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." *Cameron*, 907 F.2d at 1067 n.31; *see also United States v. Childress*, 58 F.3d 693, 730 (D.C. Cir. 1995)) (quoting same).

Here, as an initial matter, the defendant's proffered expert testimony is simply not relevant to two of the trespassory and disorderly conduct offenses found in 18 U.S.C. § 1752(a)(l) and 40 U.S.C. § 5104(e)(2)(G). *Cameron*, 907 F.2d at 1067 n.31, *Childress*, 58 F.3d at 730, *see also United States v. Rezaq*, 918 F. Supp. 463, 466 (D.D.C. 1996) ("The government argues that defendant should be precluded from introducing any evidence under Rule 12.2(b) because aircraft piracy -- the crime with which defendant is charged -- is not a specific intent crime").

Moreover, Dr. Akinsulure-Smith's proffered testimony is not relevant to the issue of any specific intent as it relates to the obstruction of an official proceeding charge under 18 U.S.C. § 1512(c)(2). A review of the expert's opinion makes clear that the doctor did not find any mental health issue negating the "corrupt intent" element of the obstruction offense under 18 U.S.C. § 1512(c). Rather, as is clear from a plain reading of Dr. Akinsulure-Smith's report, the proposed expert testimony is a broad-based claim of alleged mitigating mental health and troubled upbringing arguments. The report nowhere mentions the word "intent or "*mens rea*." As such, the testimony would only serve to impermissibly present sympathetic information about the defendant's background, experiences, hardships, and upbringing to the trier of fact, in a way that appears intended to confuse the jury as to how to apply these esoteric and difficult-to-understand

principles.   The evidence should be excluded.

### A.     The expert's opinion does not meet the requirements of Federal Rules of Evidence 403 and 702, and *Daubert*

Under *Daubert*, the district court is required to address two questions, first whether the expert's testimony is based on 'scientific knowledge,' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'   *Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1126-1127 (D.C. Cir. 2001).   The evidence must also be such that it will assist the trier of fact to understand the evidence or resolve a disputed fact. Fed. R. Evid. 702.   Under this helpfulness inquiry, the court must determine that there is a "link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case."   *United States v. Childress*, 58 F.3d 693, 730 (D.C. Cir. 1995) (noting that "[w]hile [the defendant's] mental capacity does not 'excuse' him from culpability for his activity . . . it may well be relevant to whether the government proved an element of" the crime).   The defendant must "explain a link between the evidence sought to be introduced and the *mens rea* in dispute." *United States v. Boykoff*, 186 F. Supp. 2d 347, 349 (S.D.N.Y. 2002).

One such judge in the U.S. District Court for the District of Columbia applied this framework and excluded expert psychological testimony in the mail fraud case *United States v. Rogers*, No. 05-292 (RWR), 2006 U.S. Dist. LEXIS 97240, 2006 WL 5249745 (D.D.C. 2006). In *Rogers*, the defendant was an attorney charged with the specific intent crime of mail fraud. The defense expert would have testified about the defendant's "predispositions based on his history and life experiences."   *Id*., at *2.   The Court noted that even "where evidence of a mental state is relevant to negate an element of specific intent, the court must not admit evidence that would cause undue prejudice or confusion." *Id*., at *16.   The Court held that:

11

> [C]oncerns about whether the evidence is relevant to negate specific intent as opposed to presenting a dangerously confusing theory of defense more akin to justification and excuse are best addressed through the district court's assessment of the reliability and probity of the evidence and its careful administration of that evidence." *Childress*, 58 F.3d at 730 (internal quotation marks omitted). Courts may exclude relevant psychiatric evidence under Rule 403 "[b]ecause psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury from focusing on the actual presence or absence of mens rea, and (3) 'may easily slide into wider usage that opens up the jury to theories of defense more akin to justification.'" *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990) (*quoting United States v. Pohlot*, 827 F.2d 889, 905 (3rd Cir. 1987) (noting that psychiatric evidence has a "strong danger of misuse")); *see also Mezvinsky*, 206 F. Supp. 2d at 666 (excluding "the expert testimony offered here [because it] could easily mislead the jury into thinking that such a medical condition amounts to temporary insanity or ameliorates the offense").

*Id*. In excluding the testimony, the Court held:

> Here, [the expert's] opinions concerning Rogers' capacity and susceptibility could easily mislead the jury into exactly the kind of diminished capacity defense that the IDRA sought to forbid, and that risk substantially outweighs the testimony's limited relevance. This is especially so since the testimony does not establish an inability to deceive, the nub of a *mens rea* defense here. It may well be that Rogers was working beyond capacity, but that goes no distance toward negating the proposition that he could and did intentionally make the affirmative misrepresentations alleged in the indictment with the intent to deceive.

*Id*., at *18.

Here, the proposed testimony is not "helpful" or "fit" the facts and issues of this case, and Dr. Akinsulure-Smith has no specialized training in forensic issues, *mens rea* issues, or intoxication issues.   Accordingly, the proffered testimony should be excluded.

### III. Voluntary Intoxication Defenses are Limited

Dr. Akinsulure-Smith is not qualified to present an expert opinion concerning intoxication and did not do so in her report.   In some cases, intoxication may be so severe as to make a defendant incapable of forming the requisite specific intent. *United States v. Martin*, 475 F.2d 943, 946 (D.C. Cir. 1973), *United States v. Scott*, 529 F.2d 338 (D.C. Cir. 1975).   However, voluntary

intoxication is not a defense to general intent crimes. *See United States v. Vines*, No. 01-399 (CKK), 2006 U.S. Dist. LEXIS 45751, 2006 WL 1876951 (D.D.C. 2006).

Significantly, Dr. Akinsulure-Smith is not qualified to present an expert opinion concerning intoxication. As the doctor's CV makes clear, the doctor specializes in human rights violations and immigration issues, not forensic matters or issues of intoxication. Under *Daubert*, the district court is required to address whether the expert's testimony is based on "scientific knowledge." In all instances, the proffered expert must be qualified "by knowledge, skill, experience, training, or education," and her testimony must be helpful to the trier of fact. Fed. R. Evid. 702; *Miller v. Holzmann*, 563 F. Supp. 2d 54 (D.D.C. 2008). Trial courts must make certain that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). Expert testimony that rests solely on "subjective belief or unsupported speculation" is not reliable. *Daubert*, 509 U.S. at 590. Here, Dr. Akinsulure-Smith does not have the training or experience to offer an opinion concerning intoxication.

Moreover, the doctor's opinion does not state that the defendant was intoxicated on January 6, 2021, or that any voluntary intoxication negated the specific intent to obstruct the Electoral College Certification process. Accordingly, any such opinion should be excluded at trial.

**IV.     Under FRE 703, an expert cannot act as a hearsay conduit**

Dr. Akinsulure-Smith should not be permitted to testify about the defendant's history or background; to the extent the court allows her testimony, it should be limited the defendant's state of mind on January 6. Federal Rule of Evidence 703 prohibits the admissibility of hearsay evidence underlying an expert's opinion unless the "probative value in helping the jury evaluate the opinion

13

substantially outweighs their prejudicial effect." Under Rule 703, an expert's opinion may be based on facts that are otherwise inadmissible, such as hearsay, if the facts are of a "type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703; *see also United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993). If the facts are not otherwise admissible, however, the expert may "disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. An expert may not, however, simply act as a conduit by which hearsay evidence is transmitted to the jury. *See United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (*citing United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) ("When an expert is no longer applying his extensive experience and a reliable methodology, Daubert teaches that the testimony should be excluded.")).

In her report, Dr. Akinsulure-Smith offers a lengthy discussion of the defendant's troubled background, hardships, and family dynamics, as well as his prior medical history based almost entirely on the defendant's self report. The probative value of such background information does not substantially outweigh its prejudicial effect, Fed. R. Evid. 703, and its inclusion would only serve to present otherwise inadmissible sympathetic information about the defendant to the trier of fact. Indeed, none of this information serves as a nexus to the defendant's state of mind on January 6, 2021, and whether he was capable of possessing the requisite intent under the law to commit a crime. This information appears more relevant to nullification, then negation of intent.

WHEREFORE, the government respectfully requests that the Court issue an order precluding, or limiting, defendant Philip S. Grillo from eliciting evidence or argument concerning any diminished capacity or voluntary intoxication defense. Further, the government moves *in limine* to preclude the admission of any hearsay basis for the opinions, or for any expert opinion

concerning intoxication.

                          Respectfully submitted,

                          MATTHEW M. GRAVES
                          UNITED STATES ATTORNEY
                          DC BAR NO. 481052

By:    */s/ Christopher M. Cook*
        CHRISTOPHER M. COOK
        Trial Attorney
        Bar No. KS 23860
        601 D Street, N.W.
        Washington, D.C. 20001
        (202) 616-2925
        Christopher.cook7@usdoj.gov

        */s/ Brian Morgan*
        BRIAN MORGAN
        Trial Attorney
        Bar No. NY 4276804
        601 D Street, N.W.
        Washington, D.C. 20001
        (202) 305-3717
        Brian.Morgan@usdoj.gov