UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PHILIP SEAN GRILLO,<br><br>*Defendant.* | Case No. 1:21-CR-690-RCL |

## MEMORANDUM ORDER

Defendant Philip Grillo was indicted based on his alleged participation in the protest and riot that resulted in the January 6, 2021 breach of the United States Capitol. Following a Pretrial Conference and Motions Hearing, the Court now resolves his outstanding motion to dismiss, Def.'s Mot. Dismiss, ECF No. 44, to which the government responded, USA's Opp'n Mot. Dismiss, ECF No. 51.

For his motion to dismiss, Mr. Grillo challenges Count One of his indictment, 18 U.S.C. § 1512(c)(2) and 2, for failure to state an offense and unconstitutional vagueness. Def.'s Mot. Dismiss 1. He challenges Counts Two and Three, 18 U.S.C. § 1752(a)(1) and (a)(2), for failure to state an offense. *Id.* He challenges Count Five, 40 U.S.C. § 5104(e)(2)(G), for unconstitutional overbreadth and vagueness. *Id.*

Upon consideration of the parties' filings, the whole record, and the applicable law, this Court denies Mr. Grillo's motion.

### I. LEGAL STANDARD

#### A. Motions to Dismiss an Indictment

The purpose of an indictment is to "inform the defendant of the nature of the accusation against him." *Russell v. United States*, 369 U.S. 749, 767 (1962). Accordingly, an indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting

1

the offense charged." Fed. R. Crim. P. 7(c)(1). The indictment must inform the defendant of the "precise offense" he is accused of so that "he may prepare his defense and plead double jeopardy in any further prosecution for the same offense," *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014), but need not include detailed allegations, *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007).

Under Federal Rule of Criminal Procedure 12, a defendant may raise by pretrial motion "any defense, objection, or request that a court can determine without a trial on the merits" and can challenge an indictment and move to dismiss for "failure to state an offense." Fed. R. Crim. P. 12(b)(1), (b)(3). When considering a motion to dismiss, the Court "is limited to reviewing the face of the indictment." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (emphasis and citation omitted). "[T]he indictment must be viewed as a whole and the allegations must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011). Rule 12 is the appropriate mechanism to challenge an indictment when the defendant contends that the statutory provision is unconstitutional, or inapplicable to the defendant's conduct. *United States v. Nassif*, No. 21-cr-421 (JDB), 2022 WL 4130841, at *2 (D.D.C. Sept. 12, 2022). In those circumstances, the courts review the legal sufficiency of the indictment. *Id.*

## II. DISCUSSION

### A. Mr. Grillo's Challenges to Counts One, Two, and Three are Denied

Mr. Grillo's challenges to Counts One, Two, and Three are denied for the reasons that this Court previously explained in *United States v. Bingert*, 605 F. Supp. 3d 111, 118–32 (D.D.C. 2022) and given the D.C. Circuit's decision in *United States v. Fischer*, No. 22-3038, 2023 WL 2817988 (D.C. Cir. Apr. 7, 2023). In *Bingert*, this Court explained why Section 1512(c)(2) and 2 states an offense in this context, *Bingert*, 605 F. Supp. 3d at 118–20, 123, and why it is not unconstitutionally vague, *id.* at 120–23. The Court also explained why Sections 1752(a)(1) and

2

(a)(2) state an offense in this context. *Id.* at 130–32. The defendant acknowledges that this Court has ruled on these issues, *see* Def.'s Mot. Dismiss 1 n.1. (citing *Bingert*), but wishes to "adopt the same arguments made in the cases currently on appeal after one district court judge granted a motion to dismiss." *Id.* at 1–2. That is understandable. But because nothing in the defendant's motion alters the Court's reasoning in *Bingert*, and because their Section 1512(c)(2) and 2 arguments were rejected in *Fischer*, this Court denies Mr. Grillo's identical challenge.

### B. Mr. Grillo's Challenge to Count Five is Denied

Mr. Grillo's motion raises one challenge that this Court has not previously dealt with: whether 40 U.S.C. § 5104(e)(2)(G) violates the First Amendment because it is overly broad or the Fifth Amendment because it is vague on its face. For overbreadth, Mr. Grillo contends that "[t]he plain language of this statute is alarmingly broad, and by its own terms covers three classic modes of First Amendment activity – parading, demonstrating, or picketing." Def.'s Mot. Dismiss 23. For vagueness, Mr. Grillo argues that "Section 5104(e)(2)(G) does not put ordinary people on notice of the conduct that it prohibits, and as such, gives rise to arbitrary and discriminatory enforcement." *Id.* at 26. Because the statute is not as broad as Mr. Grillo contends, nor so vague as to violate the Constitution, the Court rejects his arguments.

#### i. Section 5104(e)(2)(G) is Not Unconstitutionally Overbroad

Under traditional overbreadth doctrine, a law touching First Amendment concerns "is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 304 (2008). The doctrine balances the "competing social costs" of "threat of enforcement of an overbroad law deter[ing] people from engaging in constitutionally protected speech" on one hand and "invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal." *Id.* at 292. "Invalidation for overbreadth is strong medicine that is not to be casually employed."

3

*Id.* at 293 (internal quotation marks and citation omitted). Accordingly, this Court must "vigorously enforce[] the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* at 292.

In order to evaluate a statute, the Court must first "construe the challenged statute [for] it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* at 293. Then, the Court must "turn to whether the statute, as [the Court has] construed it, criminalizes a substantial amount of protected expressive activity." *Id.* at 297.

Section 5104(e)(2)(G) states that "[a]n individual or group of individuals may not willfully and knowingly" "parade, demonstrate, or picket in any of the Capitol Buildings." Mr. Grillo understands this language to cover not just "disruptive conduct" but rather "nearly all First Amendment activity." Def.'s Mot. Dismiss 25–26. Mr. Grillo primarily relies on legislative history to come to that conclusion. *See id.* at 24–29. However, "[l]egislative history is an uneven tool that cannot be used to contravene plain text." *Bingert*, 605 F. Supp. 3d at 128. And the plain text of Section 5104(e)(2)(G) does not sweep nearly as broadly as Mr. Grillo believes.

Starting with the definitions of the three operative verbs. To parade requires one to be part of "a public procession" especially "involving many different people," *Parade*, Merriam–Webster Dictionary Online, https://www.merriam-webster.com/dictionary/parade (last visited November 20, 2023), or to otherwise act as part of a group so that the group can be seen. *See Nassif*, 2022 WL 4130841 at *6 & n.7; *Parade*, Webster's Third New Int'l Dictionary 1635 (1965) (defining parade using various group-based definitions involving "an assembly of people"). To demonstrate is "to make a public display of sentiment for or against a person or cause." *Demonstrate*, Webster's Third New Int'l Dictionary 600 (1965); *see Nassif*, 2022 WL 4130841 at *6 (using the same definition). To picket is to "walk or stand in front" or be "posted [] in a demonstration as a protest

4

against a policy of government." *Picket*, Webster's Third New Int'l Dictionary 1710 (1965); *see Nassif*, 2022 WL 4130841 at *6 & n.8 (identifying a similar group-bound definition).

Taking these words in light of their neighbors, *see Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961), the Court understands Section 5104(e)(2)(G) to have the same scope ascribed to it by Judge Bates: to "prohibit[] taking part in an organized demonstration or parade that advocates a particular viewpoint." *See Nassif*, 2022 WL 4130841 at *6 (internal citation omitted). Furthermore, the statute prohibits that behavior only when done willfully, knowingly, and in the Capitol Buildings.

Having construed the reach of the statute, the Court must now turn to whether it criminalizes a substantial amount of protected expressive activity. It does not.

When considering the First Amendment's reach on public property, a court must begin by considering the forum where the speech or expressive conduct is regulated. "The Supreme Court has recognized three different types of public property for free speech purposes: (1) the traditional public forum, (2) the designated public forum, and (3) the nonpublic forum." *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 55 (D.D.C. 2000).

The first category covers places like "streets and parks which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (citation omitted). First Amendment activity in such places are the most protected from government intrusion.

Next, the designated public forum is "public property which the state has opened for use by the public as a place for expressive activity." *Id.* Examples include a school board meeting

5

and a municipal theater. *Id.* First Amendment activity in such forums is less protected than for the traditional public forum. *Id.*

Finally, the nonpublic forum consists of "[p]ublic property which is not by tradition or designation a forum for public communication." *Id.* at 46. The government's power to restrict First Amendment activity is at its height for nonpublic forums where "[i]n addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* That is, "[t]he Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985) (emphasis in the original).

Two courts in this district, when faced with First Amendment challenges to regulation of activity in the Capitol Buildings, have concluded that they are nonpublic forums. *See Bynum*, 93 F. Supp. 2d at 56; *Nassif*, 2022 WL 4130841 at *4. This Court agrees. Indeed, Mr. Grillo presents no argument whatsoever on whether the inside of the Capitol represents a traditional public forum or a designated public forum. And the evidence counsels against both propositions.

First, Congress has not opened up its buildings, historically or otherwise, to free and unabridged public discussion of ideas and public matters. Rather, the Capitol building is, and has been, regulated for the orderly discussion of public matters by the People's legislators and for those who wish to petition their representatives to do so in a well-ordered and sufficiently non-disruptive manner. *See Bynum*, 93 F. Supp. 2d at 56; *Nassif*, 2022 WL 4130841 at *4. In fact, "it has long been recognized that 'the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their

6

concerns to their legislators.'" *Nassif*, 2022 WL 4130841 at *4 (quoting *Bynum*, 93 F. Supp. 2d at 55).

Second, the fact that the Capitol is open for certain discussions and for observation does not render it a designated public forum. It is trite law that "[t]he government does not create a public forum by inaction or by permitting limited discourse." *Cornelius*, 473 U.S. at 802. Instead, a designated public forum arises when the government "intentionally open[s] a nontraditional forum for public discourse." *Cornelius*, 473 U.S. at 802. Here, nothing has "evidenced a clear intent [by Congress] to create a public forum." *See id.* Indeed, it has evidenced the opposite. "All indications are that Congress has not opened the Capitol as a public forum for free and open public discourse." *See Bynum*, 93 F. Supp. 2d at 56.

Consequently, there is no traditional basis for the Capitol as a public forum, nor a clear intent by Congress to render it a designated public forum. Because the Capitol is neither by tradition nor designation a public forum, it is instead a nonpublic one. Accordingly, Congress may restrict First Amendment activity so long as the restrictions are "'viewpoint neutral' and 'reasonable in light of the purpose served by the forum.'" *See id.* (quoting *Cornelius*, 473 U.S. at 806). Both requirements are satisfied here.

For viewpoint neutrality, nothing in Section 5104(e)(2)(G) singles out a particular viewpoint for punishment. It discusses no particular message, nor purpose of activity. In the context of the events leading to this criminal case, it would have prohibited parading, demonstrating, or picketing in support of certification of the Electoral College vote as much as it prohibits the same for those advocating against certification.

For reasonableness in light of the purpose served by the forum, the prohibition passes muster. The primary purpose of the Capitol is to allow Congress to carry out its lawmaking role.

7

In addition, the Capitol serves as a place where citizens can observe their legislators and at times bring their concerns directly. Section 5104(e)(2)(G) reasonably protects both functions. For the former, the prohibition prevents organized assemblages advocating a particular viewpoint from disrupting the day-to-day business of holding hearings, drafting legislation, debating proposals, negotiating deals, and voting on final language. All of those normal lawmaking functions would be threatened if organized groups were daily allowed to roam the Capitol Buildings with "a license to delay, impede, or otherwise disrupt the orderly processes of the legislature which represents all Americans." *Bynum*, 93 F. Supp. 2d at 55–56 (internal citation and ellipsis omitted). Furthermore, such parading, demonstrating, and picketing would threaten the ability for other Americans to observe their Congress and to have their own communications with lawmakers. In sum, the statute reasonably bars a particular kind of disruptive behavior from undermining the purpose served by the Capitol Buildings.

Therefore, while it is true that Section 5104(e)(2)(G) reaches expressive conduct and speech, it "is [a permissible] reasonable rule: it targets activities that Congress reasonably could have concluded would disrupt its legislative process." *Nassif*, 2022 WL 4130841 at *5. And, the ban is in step "with a long line of cases rejecting challenges to complete bans on otherwise permissible First Amendment activity as reasonable, viewpoint-neutral regulations in nonpublic fora." *Id.* (collecting cases). Furthermore, while it is possible that some hypothetical defendants might succeed on an as-applied challenge given the particular circumstances of their cases, the Court cannot and will not "summon forth an endless stream of fanciful hypotheticals" to invalidate Section 5104(e)(2)(G). *See Williams*, 553 U.S. at 301. There is an extensive plainly legitimate sweep to the law without an indication of substantial effect on protected First Amendment activity.

Accordingly, the Court will not employ the "strong medicine" of First Amendment overbreadth and invalidate the law. *See id.* at 292–93.

### ii. Section 5104(e)(2)(G) is Not Unconstitutionally Vague

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *Id.* at 304. A criminal law is void for vagueness if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Unconstitutional vagueness accordingly involves two separate but often interlocking inquiries.

First, criminal statutes do not provide fair notice when they tie culpability to "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306. Fair notice does not concern itself with the possibility that "it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved." *Id.* Instead, to provide fair notice the relevant incriminating fact simply must not be "indetermina[te]." *Id.* A statute is not vague because certain cases may present "close calls," *id.* at 305, or because it is "broad," *United States v. Andries*, No. 1:21-cr-93 (RC), 2022 WL 768684, at *9 (D.D.C. Mar. 14, 2022).

Second, a law authorizes "arbitrary and discriminatory enforcement" when it lacks any standards to govern the discretion it grants. *Agnew v. Gov't of D.C.*, 920 F.3d 49, 55 (D.C. Cir. 2019). This category includes laws whose application turns on subjective judgments or preferences. *Id.* A statute that criminalized "annoying" a passerby, for example, would invite arbitrary and discriminatory enforcement—what "annoys some people does not annoy others." *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). Nevertheless, a statute that sets an "imprecise" but ultimately comprehensible normative standard is not unconstitutionally vague. *Id.*

9

When, as here, there are First Amendment implications to the criminal statute challenged, "the requirement of a reasonable degree of clarity" is particularly important. *See Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391, 411 (D.C. Cir. 2017). Nevertheless, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306.

Applying those principles to this case, the statute is plainly not unconstitutionally vague. As the Court previously explained, Section 5104(e)(2)(G) prohibits willfully and knowingly taking part in an organized demonstration or parade that advocates a particular viewpoint in the Capitol Buildings. This, at most, "requires a person to conform his conduct to an imprecise but comprehensible normative standard." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). That this Court had to perform some basic statutory construction, and consult a dictionary, does not support Mr. Grillo's vagueness challenge. *See id.* at 1108 (using statutory construction and dictionary definitions to construe a statute and then rejecting a void for vagueness challenge). "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct at all." *Id.* at 1107 (internal quotation marks, citation, and alternations omitted). Here, Section 5104(e)(2)(G) provides sufficient clarity such that the relevant incriminating activities are not indeterminate and enforcement does not depend on judgments that are so imprecise or subjective as to render enforcement arbitrary and discriminatory. Ultimately, Section 5104(e)(2)(G) is a broad but straightforward prohibition on organized activity expressing a viewpoint in the Capitol Buildings. That standard is not void for vagueness and accordingly Mr. Grillo's challenge on those grounds is denied. *Accord Nassif*, 2022 WL 4130841 at *7.

### III.  CONCLUSION

Because the basis for Mr. Grillo's motion to dismiss is without merit, the Court hereby **ORDERS** that his motion be **DENIED**.

**IT IS SO ORDERED.**

Date: November **21**, 2023

                                                                                                    _____
                                                                                                    Royce C. Lamberth
                                                                                                    United States District Judge