UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PHILLIP SEAN GRILLO,<br><br>*Defendant.* | Case No. 1:21-cr-690 (RCL) |

## MEMORANDUM ORDER

A jury convicted Defendant Phillip Sean Grillo on December 5, 2023, on five counts related to his participation in the United States Capitol riots of January 6, 2021. Specifically, the defendant was charged with five offenses: Count One, corruptly obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); Count Two, entering and remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1); Count Three, disorderly and disruptive conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2); Count Four, violent entry and disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104 (e)(2)(D); and Count Five, parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104 (e)(2)(G). Indictment, ECF No. 27.

At the conclusion of the Government's case, and again at the conclusion of the defense's case, counsel for Defendant Grillo orally moved for acquittal pursuant to Federal Rule of Criminal Procedure 29(c). Trial Transcript 828: 11–12; 951: 15. The Court denied both of those motions. *Id.* 829: 14; 951: 17–18. The defendant has renewed his motion for acquittal. Mot. for Acquittal, ECF No. 130. The Government has filed a response [ECF No. 131] opposing the Motion on Counts Two through Five, and Mr. Grillo did not file a reply. The motion is now ripe for review.

1

For the reasons stated in this Memorandum Order, the Court will **DENY IN PART** and **GRANT IN PART** the defendant's renewed Motion for Judgment of Acquittal.

## I.    LEGAL STANDARD

### A. Rule 29

Rule 29(c) gives defendants an opportunity to "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."[1] Fed. R. Crim. P. 29(c). The Rule allows defendants to seek a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). On a post-verdict motion for judgment of acquittal, the Court "must presume that the jury has properly carried out its functions," and should thus "view the evidence in the light most favorable to the verdict." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). Judgment of acquittal is inappropriate where "any reasonable factfinder could conclude that the evidence, viewed most favorably to the government, satisfied each element [of the offense] beyond a reasonable doubt." *United States v. Slatten*, 865 F.3d 767, 781 (D.C. Cir. 2017) (citing *United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001)).

### B. Retroactivity

When the Supreme Court narrows the interpretation of a criminal statute, it creates "a new rule for the conduct of criminal prosecutions" that is "to be applied retroactively to all cases . . . not yet final." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). A case becomes final when "judgment of conviction [is] rendered, the availability of appeal exhausted, and the time for

---

[1] The Government uses much of the space in its short Response to argue that the Court should not reconsider the Motion for Judgment of Acquittal. Gov't Response 1 n.1. But Rule 29 explicitly allows parties to renew their motions for judgment of acquittal after a jury verdict, even if the Court has denied such a motion earlier in the proceedings.

petition for certiorari [has] elapsed." *United States v. Johnson*, 457 U.S. 537, 543 n.8 (1982) (quoting *Linkletter v. Walker*, 381 U.S. 618, 622 n. 5 (1965)).

## II.    DISCUSSION

### A. Sufficiency of the Evidence: Counts Two through Five

The defendant orally moved for judgment of acquittal twice during the trial. Trial Transcript 828: 11–12; 951: 15. In the first motion, the defendant's entire challenge to the sufficiency of the evidence for Counts Two through Five consisted of counsel pointing cursorily to "emerging evidence of [Grillo's] diminished capacity due to alcohol and mental illness" and "rest[ing] on what's before the Court." Trial Transcript 828: 14–829: 4. In the renewed oral motion at the close of their case, defense counsel failed to raise specific arguments challenging the sufficiency of the evidence for these four counts. *Id.* 951: 14–16. Although a renewed motion under Rule 29(c) typically must be made within fourteen days of the jury's verdict, this Court granted the defendant an extension of time to file his renewed Rule 29 motion beyond the fourteen-day deadline contemplated by the rule. Hearing Transcript, December 5, 5: 23–6: 2.

Given the lack of specificity in the oral motions for judgment of acquittal at trial, the Court would have expected the renewed motion under Rule 29(c) to at last bring a specific challenge to the sufficiency of the evidence supporting Counts Two through Five. But alas, the defendant again simply "reraise[d] his general claims of insufficiency," leaving this Court without much to consider. Mot. for Acquittal 7, ECF No. 130. Indeed, counsel for Mr. Grillo even acknowledged during closing arguments and in its motion that Mr. Grillo "paraded around" the Capitol on January 6, mirroring the language in Count Five. Trial Transcript 987: 5; Mot. for Acquittal 9; 40 U.S.C. § 5104 (e)(2)(G). Nevertheless, the Court will briefly review the evidence from trial and confirm that a "rational trier of fact could have found the essential elements" of the four counts

beyond a reasonable doubt. *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The jury heard evidence that Mr. Grillo entered the Capitol through a broken window next to the Senate Wing Door and yelled "charge" to his fellow rioters. Gov't Ex. 304. As Mr. Grillo walked up from the Crypt of the Capitol to the Rotunda, he stated that he was "storming" the Capitol in pursuit of "justice" and that he was in the Capitol that day to "stop the steal." Gov't Ex. 424. He also took photos and recorded videos on his cell phone. Gov't Ex. 313. The jury also heard testimony that Mr. Grillo "li[t] up a joint" inside the Capitol. Trial Transcript 666: 23–667: 8.

Most of the evidence introduced by defense counsel went to Grillo's ability to form the requisite intent to commit these crimes on the day he stormed the Capitol. Mr. Grillo testified that he "was pounding seltzers" throughout the day leading up to the raid on the Capitol and "eating [marijuana-infused] gummy bears." *Id.* at 771 1–2. When asked to assess how he was feeling the morning of January 6, Grillo stated that he "was absolutely blasted, and . . . very happy about that." *Id.* at 772: 21. He further testified that he "wasn't excited" about attending rallies near the Capitol on January 6 because he had attended the 2016 Presidential Inauguration, and it was "a maze." *Id.* at 775: 8. Because of this, Grillo told the jury that he ate an entire bag of gummies before heading to the National Mall. *Id.* at 774: 21 ("I ate them all. . . . I just, like, took everything. I just started eating the gummy bears.").

In sum, Mr. Grillo entered the Capitol, encouraged other rioters to "charge" with him through the already-broken window in the Capitol, made statements once inside indicating his desire to stop the steal, and interacted with law enforcement and other rioters both physically and by smoking marijuana with the latter group. The jury had to decide whether Mr. Grillo's inebriated

4

state prevented him from forming the requisite *mens rea* for the elements of Counts Two through Five. The jury found that it did not and convicted him on all four counts. Verdict, ECF No. 111.

The Court finds that the evidence seen by the jury, viewed in the light most favorable to the Government, was sufficient for a rational trier of fact to conclude that the elements of each crime were proven beyond a reasonable doubt. *See Wahl*, 290 F.3d at 375. The Court will therefore defer to the jury's verdict and deny the motion for judgment of acquittal as to Counts Two through Five.

### B. Count One and *Fischer*

Grillo also argues that there was insufficient evidence at trial to show that he violated 18 U.S.C. § 1512(c)(2) based on the Supreme Court's narrowed interpretation of that statute in *Fischer v. United States*, 603 U.S. –, 144 S. Ct. 2176 (2024). Mot. for Acquittal 7. In what is perhaps a tacit acknowledgement that his challenge to the sufficiency of evidence on Counts Two through Five does not have teeth, Mr. Grillo devotes most of his motion to Count One, the 18 U.S.C. §1512(c)(2) conviction. *Id.* Specifically, he argues that the Government failed to meet its burden of showing that he "impaired or attempted to impair the availability or integrity of records to corruptly obstruct an official proceeding." *Id.* For its part, the Government does not oppose Grillo's motion with respect to this count. This Court agrees that no rational trier of fact could have found that the evidence at trial was sufficient to prove Mr. Grillo violated Section 1512(c)(2) beyond a reasonable doubt and will therefore grant the motion for judgment of acquittal as to Count One.

On June 28, 2024, the Supreme Court held that "[t]o prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the

proceeding, or attempted to do so." *Fischer* 144 S. Ct. at 2190. Because *Fischer* was issued while Grillo's conviction was pending appeal, and therefore not yet final, it is controlling. *Griffith*, 479 U.S. at 328. The Court has reviewed the evidence presented at trial relevant to Count One and concluded that, based on the Supreme Court's narrowed construction of Section 1512(c)(2), there was insufficient evidence for the jury to convict the defendant on this Count.

The jury saw evidence at trial from the Government and heard directly from Grillo about his actions inside the Capitol on January 6. The Government's evidence consisted of testimony from six witnesses and various exhibits, including videos and images of Grillo inside the Capitol on January 6. *E.g.*, Gov't Exs. 313–14. The jury also saw a video in which Grillo and other rioters were "moving towards the [East Rotunda] door to open it." Gov't Ex. 310; Trial Transcript 439: 21 (Testimony of George McCree).

The jury heard from several members of the Capitol Hill Police. One witness was Lieutenant George McCree, who testified that having "thousands of unauthorized persons" in the Capitol means that the Capitol Hill Police are "more than likely going to need to relocate or protect the members [of Congress] in some way." Trial Transcript 441: 19–23. Another witness, Sergeant Anthony Warner, was one of the many members of the Capitol Hill Police who formed a police line to prevent the rioters from entering the Capitol on January 6, 2021. When the initial line failed, Sergeant Warner and his comrades retreated and then "reengaged to create another police line to stop advancement further." Trial Transcript 523: 11–12. His testimony detailed the numerous times the Capitol Hill Police force had to give way to the suffocating mass of rioters pushing them deeper into the Capitol. *E.g.* Trial Transcript 539: 9-11 ("I could literally feel the breath coming out of me as I was being pinned.").

While Sergeant Warner's testimony was a harrowing recollection of the events of the day, nowhere does he testify that Mr. Grillo impaired or attempt to impair the availability or integrity of *records* to corruptly obstruct an official proceeding. Nor does the testimony of other witnesses provide more concrete evidence that Grillo's actions did anything to impair the certification of the electoral votes on January 6. The only evidence that the Government put forward of Mr. Grillo's efforts to impair the availability or integrity of records to corruptly obstruct an official proceeding came during cross-examination of Mr. Grillo. Mr. Grillo stated that he was on the Capitol to "stop the steal," Gov't Ex. 424. And the Government introduced a retweet from Mr. Grillo's Twitter account stating "[t]he vice president has the power to reject fraudulently chosen electors." Gov't Ex. 426. But while this evidence may have been relevant to Grillo's mental state when he stormed the Capitol, it did not provide any indication that Grillo acted on those thoughts once inside. While Grillo's unlawful presence in the Capitol added to the chaos and danger to Capitol Police, members of Congress, Congressional staffers, and the Vice President, it alone does not constitute sufficient evidence upon which any rational trier of fact could find Mr. Grillo guilty of Count One beyond a reasonable doubt based on the Supreme Court's narrowed interpretation of the statute underlying Count One.

### III.   CONCLUSION

The Court finds that there was sufficient evidence from which a rational trier of fact could have found the elements of Counts Two through Five proven beyond a reasonable doubt, but that the evidence presented at trial was insufficient for a rational trier of fact to find the elements of Count One, as narrowed by the Supreme Court in *Fischer*, proven beyond a reasonable doubt. For these reasons, the Court will **GRANT IN PART** Mr. Grillo's Motion [ECF No. 130] for Judgment

7

of Acquittal with respect to Count One and **DENY IN PART** the Motion with respect to Counts Two through Five.

    **IT IS SO ORDERED.**

Date: November 25, 2024

                                                               Royce C. Lamberth
                                                               United States District Judge